**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**MELINDA BRILLINGER**                                    **CIVIL ACTION**

**VERSUS**                                                           **NO.  14-1540**

**CAROLYN W. COLVIN, ACTING COMMISSIONER     SECTION: "G"(2)
SOCIAL SECURITY ADMINISTRATION**

<u>**ORDER AND REASONS**</u>

Before the Court are Plaintiff Melinda Brillinger's ("Plaintiff") objections[1] to the March 2, 2015 Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying her claim for disability insurance benefits ("DBI") and supplemental security income benefits ("SSI") under Titles II and XVI of the Social Security Act (the "Act").[3] The Magistrate Judge recommended that Plaintiff's complaint be dismissed with prejudice.[4] Plaintiff objects, requesting that the case be remanded to the Administrative Law Judge ("ALJ") for a new hearing.[5] Having considered Plaintiff's objections, the Magistrate Judge's Report and Recommendation, the record, and the applicable law, for the following reasons the Court will overrule Plaintiff's objections, adopt the Magistrate Judge's Report and Recommendation and dismiss this action with prejudice.

---

[1] Rec. Doc. 18.

[2] Rec. Doc. 17.

[3] Rec. Doc. 1.

[4] Rec. Doc. 17 at 30.

[5] Rec. Doc. 18.

# I. Background

## A. Procedural History

On February 27, 2012, Plaintiff filed an application for DBI and SSI, alleging a disability

onset date of January 21, 2012.[6] Plaintiff reported "severe migraines, skin disorder, anxiety and

fibromialgia."[7] After her claims were denied at the agency level, Plaintiff requested a hearing before

an ALJ, which was held on February 6, 2013.[8] Participating were Plaintiff, her counsel and

Katherine Prieur, a vocational expert.[9]

On March 20, 2013, the ALJ issued a decision denying Plaintiff's applications for benefits.[10]

The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process.[11] At step

---

[6] Adm. Rec. at 138, 145.

[7] Id. at 166.

[8] Id. at 30–66.

[9] Id.

[10] Id. at 17–25.

[11] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's

one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 21, 2012.[12] At step two, the ALJ concluded that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine; fibromyalgia; and obesity."[13] At step three, the ALJ held that Plaintiff did not have an impairment that meets or medically equals the severity of one of the listed impairments under the regulations.[14]

At step four, the ALJ found Plaintiff's "allegations of disabling pain discredited by evidence of infrequent and conservative medical treatment."[15] He noted that Plaintiff attributed her limited treatment to a lack of medical insurance, but found that the record showed that Plaintiff sought medical treatment throughout the relevant period.[16] He also noted that "none of the objective studies . . . clinically correlate[d] with the alleged heaviness and reduced strength [Plaintiff] complain[ed] of in her legs."[17] Further, the ALJ found that Plaintiff's September 12, 2012 and March 20, 2012 examinations were "essentially normal."[18] Although the September 11, 2012 MRI revealed some abnormal findings, the ALJ found that "there was nothing in this report, or any other reports,

---

age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id.* § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

[12] Adm. Rec. at 19.

[13] *Id.*

[14] *Id.* at 20.

[15] *Id.* at 23.

[16] *Id.*

[17] *Id.*

[18] *Id.*

substantiating [Plaintiff's] allegation that she needs to recline with her feet elevated for six to seven hours per day."[19] The ALJ gave little weight to the residual functional capacity assessment completed by Dr. Scardino.[20] He gave more weight to Plaintiff's testimony, "but only to the extent that her allegations regarding sitting and standing are consistent with the residual functional capacity."[21] He found nothing in the record to support Plaintiff's allegation that she needed to recline with her feet elevated for six to seven hours per day.[22] Accordingly, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) and 416.967(a) except she "cannot sit for up to 20 minutes at a time and then has to be allowed to change positions in her seat or stand for up to a minute; and she can stand for up to 15 minutes at a time and then has to be allowed to sit."[23]

At step four, the ALJ also found that Plaintiff was unable to perform any past relevant work.[24] However, at step five, the ALJ determined that given Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.[25] Therefore, the ALJ determined that Plaintiff was not under a disability from January 21, 2012, through March 20, 2013, the date of the decision.[26]

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 24.

[26] *Id.* at 25.

On March 27, 2013, Plaintiff requested reconsideration by the ALJ, noting that it appeared that the ALJ had not considered a post-hearing submission.[27] On April 29, 2013, the ALJ issued an amended decision, reconsidering his prior decision in light of the post-hearing submission, but again denying Plaintiff's application for benefits.[28] Specifically, the ALJ considered a March 11, 2013 report by Dr. John Logan, a surgical spine specialist.[29] The ALJ noted that the issue of Plaintiff's credibility was "fully explored" in the prior decision.[30] Even taking into account this evidence and the need for possible surgical intervention, the ALJ found nothing in the record to justify Plaintiff's "allegations that she would need to recline with her feet elevated for six to seven hours per day."[31] The ALJ noted that the evidence corroborated some of Plaintiff's allegations regarding her difficulty with sitting, standing, lifting and carrying, but found that those issues had been accounted for in determining Plaintiff's RFC.[32]

Plaintiff requested review by the Appeals Council.[33] The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on May 6, 2014.[34] On July 2, 2014, Plaintiff filed a complaint seeking judicial review

---

[27] *Id.* at 13.

[28] *Id.* at 11–12.

[29] *Id.*

[30] *Id.* at 11.

[31] *Id.* at 12.

[32] *Id.*

[33] *Id.* at 7.

[34] *Id.* at 1–6.

pursuant to Section 405(g) of the Act,[35] and this matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On September 23, 2014, the Commissioner answered the complaint.[36]

On October 23, 2014, Plaintiff filed a memorandum in support of her appeal, arguing that "[t]he ALJ's assesment [sic] of Plaintiff's credibility regarding the need to lay down frequently through the day was based on so many erroneous conclusions of fact and erroneous applications of law that the analysis of credibility per the dictates of SSR 96-7p is unsupported by substantial evidence."[37] On November 25, 2014, the Commissioner filed a reply brief, arguing that substantial evidence supports the ALJ's decision that Plaintiff was not disabled within the meaning of the Act.[38]

**B. Report and Recommendation Findings**

The Magistrate Judge issued his Report and Recommendation on March 2, 2015.[39] The Magistrate Judge provided a detailed summary of the testimony given at the February 6, 2013 hearing.[40] He also noted that he had reviewed the medical evidence.[41] Finding the ALJ's summary of the medical evidence substantially correct, the Magistrate Judge incorporated those findings by reference.[42]

---

[35] Rec. Doc. 1.

[36] Rec. Doc. 11.

[37] Rec. Doc. 14 at 7.

[38] Rec. Doc. 16 at 6.

[39] Rec. Doc. 17.

[40] *Id.* at 7–15.

[41] *Id.* at 15.

[42] *Id.*

The Magistrate Judge found substantial evidence to support the ALJ's credibility determination.[43] According to the Magistrate Judge, the ALJ noted that Plaintiff's credibility was "undermined by evidence of infrequent and conservative medical treatment, the lack of objective studies to correlate clinically with the alleged heaviness and reduced strength in her legs, her essentially normal physical examinations in March and September 2012, the lack of medication for fibromyalgia and the lack of any physician's restriction to lie down with her feet elevated for six to seven hours."[44] The Magistrate Judge found that it was "within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference."[45] The Magistrate Judge found that the ALJ's findings regarding Plaintiff's credibility were substantially supported by the evidence, including the opinions of her treating physicians and the consultative physician, Dr. DiGiorgio.[46] The Magistrate Judge rejected Plaintiff's argument that Dr. DiGiorgio's opinion should be discounted because she is a dermatologist, noting that Plaintiff relies on information found on a third-party website and printed on October 23, 2014, more than two years after Dr. DiGiorgio evaluated Plaintiff.[47] The Magistrate Judge found nothing in the record to indicate that Dr. DiGiorgio was not qualified to render a medical opinion.[48] The Magistrate Judge opined that Dr. DiGiorgio's report was not substantially contradicted by any other physician, and,

---

[43] *Id.*

[44] *Id.* at 15–16.

[45] *Id.* at 16 (citing *Jenkins v. Astrue*, 250 F. App'x 645, 647 (5th Cir. 2007) (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)).

[46] *Id.* at 18–19.

[47] *Id.* at 19.

[48] *Id.*

therefore, the ALJ was entitled to consider and rely upon her findings.[49]

The Magistrate Judge reviewed the medical records spanning from July 19, 2011 to March 25, 2013,[50] finding that the entirety of the medical records substantially supports the ALJ's evaluation of Plaintiff's credibility.[51] He noted that Plaintiff had "relatively infrequent and conservative medical treatment for her back and leg problems until February 27, 2013, more than one year after her alleged onset date."[52] "To the extent that Dr. Logan's report on February 27, 2013, appears to document some new or increased symptoms of back and neck pain and recommends surgery for the first time," the Magistrate Judge found that "the report may reflect deterioration of a condition that was not previously disabling and that may be the basis for a new application for benefits."[53] The Magistrate Judge noted that this Court may not reweigh the evidence, and found that Plaintiff's assignment of error lacks merit because substantial evidence in the record supports the ALJ's findings.[54]

## II. Objections

### A. Plaintiff's Objections

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation on June 16, 2015.[55] Plaintiff again asserts that "the ALJ's credibility finding regarding her complaints

---

[49] *Id.* at 21.

[50] *Id.* at 21–28.

[51] *Id.* at 28.

[52] *Id.*

[53] *Id.* at 29 (citing *Joubert v. Astrue*, 287 F. App'x 380, 383 (5th Cir. 2008); *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995)).

[54] *Id.* at 29–30.

[55] Rec. Doc. 18.

of disabling pain is not supported by substantial evidence and must be overturned."[56] Plaintiff notes that the law defines substantial evidence as "such 'relevant' evidence as a reasonable mind might accept as adequate to support the conclusion."[57] Therefore, Plaintiff contends that "[t]he corollary of this is also true: Evidence which is not relevant to the Plaintiff's complaints of disabling back pain cannot be used to provide support for a decision she is not credible."[58]

According to Plaintiff, the Magistrate Judge asserted that the ALJ's opinion was based on substantial evidence because: "[1] the ALJ credited the testimony to the extent it correlated with the MRI; [2] the consult exam by Dr. [Di]Giorgio April 10, 2012 was essentially normal and physical exams in April, May, August, September and December, 2012 were essentially normal; and [3] plaintiff had relatively infrequent and conservative medical treatment prior to February 27, 2013."[59]

As to the first argument, Plaintiff contends that the ALJ did not credit Plaintiff's testimony "to the extent it correlated with the MRI," but instead was "dismissive of and mischaracterized the results of the MRI when he stated that the MRI only showed 'some abnormalities.'"[60] Plaintiff asserts that the MRI correlates her complaints of "severe back and leg pain as well as feelings of heaviness and reduced strength in her legs."[61] She notes that the MRI shows "a large disc extrusion to the left of midline which results in essentially complete obliteration of the spinal canal and severe

---

[56] *Id.* at 1.

[57] *Id.* (citing *Richarson v. Perales*, 402 U.S. 389, 401 (1971)).

[58] *Id.*

[59] *Id.* at 3.

[60] *Id.*

[61] *Id.*

compression of the cauda equina nerve roots."[62] According to Plaintiff, compression of the cauda equina nerve roots can cause lower back pain, sharp stabbing leg pain and progressive weakness in the lower extremities.[63] Therefore, she asserts that the objective studies do correlate with her complaints of pain.[64]

As to the second argument, Plaintiff asserts that "even though the consult exam with Dr. [Di]Giorgio April 10, 2012 was essentially normal, the Plaintiff's exam at the time of the hearing was not."[65] She argues that SSR 96-7p applies here.[66] According to Plaintiff, that regulation notes that "[o]ver time, there may also be medical signs and laboratory findings that, though not directly supporting or refuting statements about the intensity or persistence of pain or other symptoms, demonstrate worsening or improvement of the underlying medial condition."[67]

Plaintiff asserts that her "credibility at the time of the decision should not have been based on a year old consult exam, when more recent surgical evaluations revealed abnormalities in examination significant enough to warrant a recommendation for surgery from two doctors and clearly demonstrated a worsening in her underlying medical condition."[68] She contends that the ALJ cited two exams to support his conclusion that Plaintiff was not credible—an April 10, 2012

---

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at 4.

consultative examination and a September 12, 2012 examination.[69] According to Plaintiff, the September 2012 examination was for signs of spondyloarthropathy of the right hip, and she was not being examined for her back and leg problems.[70] She contends that this examination was irrelevant to her allegation of disabling back and leg pain.[71] Plaintiff points to an emergency room examination at Ochsner which showed left paravertebral tenderness, decreased range of motion and a positive straight leg raising test productive of sciatic pain at 30 degrees.[72]

Plaintiff asserts that she had normal exams in May, August and December 2012, but those exams are irrelevant because they were for conditions unrelated to her back problems.[73] According to Plaintiff, the ALJ did not consider these examinations, and the Magistrate Judge erred in considering them.[74]

Finally, Plaintiff asserts that the Magistrate Judge erred in relying on her "inconsistent and conservative treatment" to find that the ALJ had substantial evidence to support his determination that Plaintiff was not credible.[75] Plaintiff contends that she did not have medical insurance and was relying upon a charity hospital system.[76] She cites SSR 96-7p, which provides that "[t]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a

---

[69] *Id.*

[70] *Id.* (citing Adm. Rec. at 363–65).

[71] *Id.*

[72] *Id.* (citing Adm. Rec. at 388–89).

[73] *Id.* (citing Adm. Rec. at 358, 355–56).

[74] *Id.*

[75] *Id.* at 5.

[76] *Id.*

failure to pursue regular medical treatment without first considering any explanations . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment."[77] She contends that "she cannot be faulted because of the Charity System's failure to set a neurosurgery clinic appointment."[78]

## B. The Commissioner's Response

The Commissioner did not file a brief in opposition to Plaintiff's objections despite receiving electronic notice of the filing posted on June 16, 2015.

## III. Standard of Review

### A. Review of the Magistrate Judge's Report and Recommendation

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A District Judge "may accept, reject, or modify the recommended disposition" of a Magistrate Judge on a dispositive matter.[79] The District Judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to." A District Court's review is limited to plain error of parts of the report which are not properly objected to.[80]

### B. Standard of Review of Commissioner's Final Decision on SSI and DIB Benefits

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

---

[77] *Id.*

[78] *Id.*

[79] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[80] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

remanding the cause for a rehearing."[81] Appellate review of the Commissioner's denial of SSI and DIB benefits[82] is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[83] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[84] The Court must review the whole record to determine if such evidence exists.[85] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[86] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[87] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[88]

---

[81] 42 U.S.C. § 405(g).

[82] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1382 n. 3 (5th Cir. 1988).

[83] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[84] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[85] *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986).

[86] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[87] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[88] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

## IV. Law and Analysis

### A.    *Law Applicable to Qualification for DIB and SSI*

To be considered disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[89] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[90] The regulations include a five-step evaluation process for determining whether an impairment constitutes a disability, and the five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[91] The claimant has the burden of proof under the first four parts of the inquiry, and if he successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of engaging in alternative substantial gainful employment, which is available in the national economy.[92]

In the instant case, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, fibromyalgia and obesity were severe impairments within the meaning of the Act.[93] The ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments under the regulations, and Plaintiff retained the RFC to perform sedentary work with restrictions on sitting for up to 20 minutes at a time and then being allowed to change positions and

---

[89] 42 U.S.C. § 423(d)(1)(A).

[90] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

[91] *Id.* §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

[92] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[93] Adm. Rec. at 19.

standing for up to 15 minutes at a time and then being allowed to change positions.[94] The ALJ concluded that Plaintiff could not perform her past relevant work, but that jobs exist in significant numbers in the national economy that Plaintiff can perform.[95] Accordingly, the ALJ concluded that Plaintiff was not disabled.[96] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[97]

**B.      *Plaintiff's Allegation that She Must Recline With Her Feet Elevated for Most of the Day***

        Plaintiff asserts that she has severe lower back pain which requires her to lay down or recline with her feet elevated for seven to eight hours per day.[98] She contends that the September 12, 2011 MRI correlates her complaints of pain.[99] Plaintiff objects to the Magistrate Judge's finding that the ALJ credited Plaintiff's testimony to the extent it correlated with the MRI.[100] According to Plaintiff, the ALJ was dismissive of and mischaracterized the results of the MRI when he stated that the MRI only showed some abnormalities.[101] She notes that the MRI shows "a large disc extrusion to the left of midline which results in essentially complete obliteration of the spinal canal and severe compression of the cauda equina nerve roots."[102] According to Plaintiff, compression of the cauda

---

[94] *Id.* at 20.

[95] *Id.* at 23–24.

[96] *Id.* at 25.

[97] *See  Perez*, 415 F.3d at 461

[98] Rec. Doc. 18 at 1.

[99] *Id.* at 3.

[100] *Id.*

[101] *Id.*

[102] *Id.*

equina nerve roots can cause lower back pain, sharp stabbing leg pain and progressive weakness in the lower extremities.[103] Therefore, she asserts that the objective studies do correlate with her complaints of pain.[104]

"While pain, by itself, may be enough to justify an award of disability benefits . . . subjective complaints of pain must be substantiated by objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain."[105] "The absence in the record of objective factors indicating the existence of severe pain, such as persistent significant limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition justifies the conclusions of the administrative law judge."[106] "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference."[107] The ALJ is required to make "affirmative findings regarding a claimant's subjective complaints [of pain], and such findings should be upheld if supported by substantial evidence."[108]

At the administrative hearing, Plaintiff testified that she spends seven to eight hours per day either reclining or laying down because it is "too difficult to walk around or stand or even stay seated for too long without [her] legs becoming stiff or heavy."[109] She acknowledged that a doctor

---

[103] *Id.*

[104] *Id.*

[105] *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (internal citations omitted).

[106] *Id.*

[107] *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (internal citations omitted).

[108] *Jenkins v. Astrue*. 250 F. App'x 645, 647 (5th Cir. 2007) (internal citations and quotation marks omitted).

[109] Adm. Rec. at 49–50.

did not impose this restriction on her activity, but she does so because she has "found that that's [sic] what works."[110] Plaintiff relies on a September 11, 2012 MRI, which she asserts correlates her complaints of "severe back and leg pain as well as feelings of heaviness and reduced strength in her legs."[111] At level L4–L3, the MRI showed "a large disc extrusion to the left of midline which results in essentially complete obliteration of the spinal canal and severe compression of the cauda nerve roots."[112] At level L5–S1, the MRI showed "moderate disc space narrowing, mild desiccated disc bulging, and a shallow right paracentral disc protrusion which contacts the descending right S1 nerve root within the right lateral recess."[113] The ALJ considered this report, noting that although the MRI "revealed some abnormal findings, there is nothing in this report, or any other reports, substantiating [Plaintiff's] allegation that she needs to recline with her feet elevated for six to seven hours per day."[114]

Plaintiff asserts that compression of the cauda equina nerve roots can cause lower back pain, sharp stabbing leg pain and progressive weakness in the lower extremities.[115] She attached an article from spine-health.com to her brief, which supports her assertion.[116] However, Plaintiff does not point to any medical evidence to support her assertion that she must recline and elevate her legs for seven to eight hours per day. In fact, at the administrative hearing, she acknowledged that no doctor

---

[110] *Id.* at 54.

[111] Rec. Doc. 18 at 3 (citing Adm. Rec. at 349–50).

[112] Adm. Rec. at 349.

[113] *Id.* at 349–50.

[114] *Id.* at 23. At the hearing, Plaintiff testified that she lays down or reclines for seven to eight hours per day. *Id.* at 49–50.

[115] Rec. Doc. 18 at 3.

[116] *See* Rec. Doc. 14-2 at 1.

imposed this restriction on her activity.[117]

Plaintiff also relies on the opinion of Dr. Logan that her condition warranted surgical intervention.[118] On March 11, 2013, Dr. Logan opined that Plaintiff was "more likely than not a candidate for decompression versus decompression and fusion surgery."[119] The ALJ considered this evidence in his supplemental opinion, finding that even accounting for the possibility of surgical intervention, there was nothing in the record to justify Plaintiff's allegation that she must lay down or recline with her legs elevated for most of the day.[120] After reviewing the record, the Court finds no medical evidence to support Plaintiff's assertion that she must lay down or recline with her legs elevated for seven to eight hours per day. Accordingly, on *de novo* review, the Court finds that the ALJ's determination that there was nothing in the record to justify Plaintiff's allegation that she must lay down or recline with her legs elevated for six to seven hours per day is supported by substantial evidence. This opinion, however, would not preclude Plaintiff from securing benefits at a later date, if she can establish "the subsequent deterioration of the previously non-disabling condition."[121]

**C.    *The ALJ's Credibility Determination***

**1.    The ALJ's Consideration of the April and September 2012 Exams**

Plaintiff contends that the ALJ cited two exams to support his conclusion that Plaintiff was

---

[117] *See* Adm. Rec. at 53.

[118] Rec. Doc. 18 at 3.

[119] Adm. Rec. at 395.

[120] *Id.* at 12.

[121] *Falco v. Shalala*, 27 F.3d 160, 164 & n.20 (5th Cir. 1994) (quoting *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989)).

not credible—an April 10, 2012 consultative examination and a September 12, 2012 examination.[122] Plaintiff asserts that her "credibility at the time of the decision should not have been based on a year old consult exam, when more recent surgical evaluations revealed abnormalities in examination significant enough to warrant a recommendation for surgery from two doctors and clearly demonstrated a worsening in her underlying medical condition."[123] According to Plaintiff, the September 2012 examination was irrelevant because it was for signs of spondyloarthropathy of the right hip, and she was not being examined for her back and leg problems.[124]

SSR 96-7p notes that it is not sufficient for the ALJ to make a single conclusory statement that an "individual's allegations have been considered" or that "the allegations are not credible." The Ruling requires that:

> The . . . decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Here, the ALJ's decision contained specific reasons for its finding on Plaintiff's credibility. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible."[125] The ALJ noted that the September 11, 2012 MRI "revealed some abnormal findings," but found nothing in the record substantiating Plaintiff's assertion that she needed to lay down or recline with her feet elevated for most of the day.[126]

---

[122] Rec. Doc. 18 at 4.

[123] *Id.*

[124] *Id.* (citing Adm. Rec. at 363–65).

[125] Adm. Rec. at 23.

[126] *Id.*

Accordingly, the ALJ credited Plaintiff's testimony to the extent it was consistent with the medical records.[127]

Plaintiff asserts that the ALJ should not have relied on the September 12, 2012 exam because it was for signs of spondyloarthropathy of the right hip, and she was not being examined for her back and leg problems. The ALJ cited the exam noting that her physical examination was "essentially normal."[128] While the examination was not specifically related to Plaintiff's back condition, the examiner performed a physical examination, which was essentially normal.[129] The report does not indicate that Plaintiff made any complaints of back pain. Accordingly, the Court finds that it was appropriate for the ALJ to consider this evidence.

Plaintiff also asserts that the ALJ should not have relied on the consultative examination performed by Dr. DiGiorgio on April 10, 2012, because subsequently surgery was recommended. She relies on SSR 96-7p, which provides that "[o]ver time, there may also be medical signs and laboratory findings that, though not directly supporting or refuting statements about the intensity or persistence of pain or other symptoms, demonstrate worsening or improvement of the underlying medial condition."

The ALJ did not only rely on the April 2012 and September 2012 exam as Plaintiff asserts. As noted above, the ALJ considered Dr. Logan's March 11, 2013 opinion that Plaintiff was likely a candidate for decompression surgery.[130] In his supplemental opinion, the ALJ found that even accounting for the possibility of surgical intervention, there was nothing in the record to justify

---

[127] *Id.*

[128] *Id.*

[129] *Id.* at 364.

[130] *Id.* at 12, 395.

Plaintiff's allegation that she must lay down or recline with her legs elevated for most of the day.[131] The ALJ also noted that while this evidence corroborated some of Plaintiff's allegations regarding her difficulty with sitting, standing, lifting and carrying, those issues had been accounted for in determining Plaintiff's RFC.[132]

Moreover, "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."[133] The fact that a doctor recommended surgery would not, in itself, require a finding that the individual is disabled. Plaintiff contends that she cannot work because she must lay down or recline with her legs elevated for most of the day. However, she offered no medical evidence to support her assertion. The ALJ credited Plaintiff's testimony to the extent it was corroborated by the medical evidence. Accordingly, on *de novo* review, the Court finds that the ALJ's evaluation of Plaintiff's credibility was not contrary to law and was supported by substantial evidence.

### 2. The Magistrate Judge's Consideration of the May, August and December 2012 Exams

Plaintiff also asserts that the Magistrate Judge erred in considering her "essentially normal exams" in May, August and December 2012 at LSU Bogalusa Medical Center in evaluating the ALJ's credibility determination, because those exams were for conditions unrelated to her back problems and, therefore, irrelevant.[134] According to Plaintiff, the ALJ did not consider these

---

[131] *Id.* at 12.

[132] *Id.*

[133] *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

[134] Rec. Doc. 18 at 4.

examinations, and the Magistrate Judge erred in considering them.[135]

The Report and Recommendation issued by the Magistrate Judge notes that on May 23, 2012, Plaintiff was examined for esophagitis, gastric ulcer and duedenitis.[136] It also notes that she had a follow-up examination on August 20, 2012 for her abdominal problems.[137] Finally, the Report and Recommendation notes that on December 12, 2012 Plaintiff was examined for sinusitis.[138] During each of these visits, Plaintiff's physical examinations were normal.[139]

These medical records were part of the administrative record before the ALJ. Plaintiff relies on *Halterman ex rel. Halterman v. Colvin*, where the Fifth Circuit recognized that the reviewing court may not "re-weigh the evidence or substitute [its] own judgment for that of the Commissioner."[140] However, she cites no authority to support her assertion that the Magistrate Judge should not have cited these records simply because they were not specifically cited in the ALJ's opinion. The ALJ's opinion notes that he considered "*all* of the evidence of record."[141] The Report and Recommendation summarizes these additional medical examinations, but also notes that the examinations were for abdominal problems and sinusitis, not Plaintiff's back condition.[142]

In Plaintiff's application for benefits, she stated that "[s]evere migrains, skin disorder,

---

[135] *Id.*

[136] Rec. Doc 17 at 23 (citing Adm. Rec. at 358).

[137] *Id.* at 24 (citing Adm. Rec. at 355–56).

[138] *Id.* at 26 (citing Adm. Rec. at 374–75).

[139] *See* Adm. Rec. at 358, 355–36, 378–75.

[140] 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

[141] *Id.* at 20 (emphasis added).

[142] *See* Rec. Doc. 17 at 23–24, 26.

anxiety, [and] fibromyolgia" were the conditions limiting her ability to work.[143] The regulations provide that, in determining an individual's RFC, the ALJ must consider "all of [the individual's] medically determinable impairments . . . including [the] medically determinable impairments that are not 'severe.'"[144] The Magistrate Judge did not re-weigh the evidence, but instead provided a thorough discussion of the medical records considered by the ALJ. Accordingly, the Court finds that the Magistrate Judge did not err in summarizing these additional medical records to support his determination that substantial evidence supported the ALJ's findings.

### D.   Consideration of Plaintiff's Inconsistent Treatment

Finally, Plaintiff asserts that the ALJ erred in relying on her "inconsistent and conservative treatment" in finding that she was not credible.[145] Plaintiff contends that she did not have medical insurance and was relying upon a charity hospital system.[146] She contends that "she cannot be faulted because of the Charity System's failure to set a neurosurgery clinic appointment."[147]

SSR 96-7p provides that "[t]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to pursue regular medical treatment without first considering any explanations . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment." The Fifth Circuit has recognized that if an individual cannot afford or otherwise obtain prescribed treatment or medication, the condition is disabling.[148]

---

[143] Adm. Rec. at 166.

[144] 20 C.F.R. § 416.945(a)(2).

[145] Rec. Doc. 18 at 5.

[146] *Id.*

[147] *Id.*

[148] *Lovelace*, 813 F.2d at 59 ("medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered."

However, pursuant to SSR 82-59 "[a]ll possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored."

Here, there is no evidence to show that Plaintiff was unable to obtain medical care due to her indigence. The ALJ correctly noted that "records show that [Plaintiff] sought medical treatment throughout the relevant period, and there is nothing in the record to support an argument that she was ever denied subsidized care at free health clinics or hospitals."[149] Plaintiff argues that "she cannot be faulted because of the Charity System's failure to set a neurosurgery clinic appointment."[150] However, the record reflects that Plaintiff was evaluated by Dr. Logan, a surgical spine specialist, and the ALJ considered this evidence in his supplemental decision. Accordingly, on *de novo* review, the Court finds that the ALJ did not err in considering Plaintiff's inconsistent and conservative treatment in assessing Plaintiff's credibility.

---

[149] Adm. Rec. at 23.

[150] Rec. Doc. 18 at 5.

## V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court **OVERRULES** Plaintiff's objections**;**

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Magistrate Judge's recommendation;

**IT IS FURTHER ORDERED** the Plaintiff's   complaint is **DISMISSED WITH PREJUDICE.**

**NEW ORLEANS, LOUISIANA**, on this  _21st_  day of September, 2015.


**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**